Argued and submitted April 6, affirmed September 22, 1981

STATE OF OREGON,
*Respondent,*
*v.*
GENE AUBREY BROWN,
*Petitioner.*

(CA 16893, SC 27547)

634 P2d 212

David E. Groom, Deputy Public Defender, argued the cause for petitioner. With him on the briefs were Gary D. Babcock, Public Defender, Salem, and James A. Doherty, Tillamook County Public Defender.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

CAMPBELL, J.

Linde, J., concurred and filed an opinion.

## CAMPBELL, J.

The issue in this case is: Can the police, without a warrant and without independent probable cause and exigent circumstances, search a closed container seized from the person of a lawfully arrested individual during the booking process at a place of detention? This is one of the questions we left for future consideration in *State v. Florance,* 270 Or 169, 192, 527 P2d 1202 (1974).[1]

At approximately 2:30 a.m. on July 23, 1978, the defendant in his vehicle was stopped by a state police officer for making an improper left turn. The officer proceeded to give the defendant standard field sobriety tests. The defendant was then arrested for driving while under the influence of intoxicants and transported to the Tillamook County jail to be lodged and to take a breathalyzer test. At the jail the defendant requested permission to go to the men's room. The corrections officer told the defendant to empty his pockets and put his possessions on the counter. The defendant's property from his person included a flat metal cigarette box and a very small brown glass vial with a plastic top. The cigarette box is approximately 2 3/4 inches by 3 1/2 inches with a depth of 5/16th of an inch. It is painted white with black printing, which includes "The Balkan Sobranie Cigarettes," "Made from the Finest Yenidje Tobacco," and "Made in England." The box is designed to hold 10 cigarettes. The brown glass vial is 1 1/8 inches deep and 1/2 inch in diameter.

The metal cigarette box was held shut by a piece of black electrician's tape. While the defendant was in the men's room, an officer opened the cigarette box and found a hand-rolled cigarette, small packets of white powder, a razor blade, a drinking straw, and a pack of cigarette papers. The packets were marked "1/4," "1 g.," and "1/2." The small vial contained traces of a white powder.

---

[1] In *State v. Florance,* 270 Or 169, 192, 527 P2d 1202 (1974), this court said:

"* * * [W]e do not undertake to decide the nature, scope and intensity of the search that may reasonably be made of an arrested person at the time of the booking of such a person for jail, including the extent to which an inventory may be made of the contents of his billfold or wallet or of other articles in his possession * * *."

The corrections officer testified that it was standard procedure to open and inventory the contents of all containers, including purses and wallets, found on the person of an individual being booked at the Tillamook County jail. "The purpose of the inventory is for the protection" of the person's property and "for the security of the jail and the protection of the inmates and staff * * *." The defendant is required to sign the inventory list and then his property "is placed in a steel box and locked up." The corrections officer said that it was not his practice to inspect personal papers.

The defendant testified that he kept the cigarette box taped shut because the "stuff inside was valuable." He said: "Sometimes I had a gold razor blade in there."

After the search the defendant was given a breathalyzer test. The results of the test showed .18 per cent of blood alcohol. The defendant said he had been drinking beer in a tavern for five or six hours at the rate of two beers per hour.

A district attorney's information was filed against the defendant charging him with the crime of possession of a controlled substance, cocaine. ORS 475.992(4). The trial court allowed the defendant's motion to suppress "all evidence of controlled substances taken from defendant" during the booking process at the Tillamook County jail.[2]

The state appealed to the Court of Appeals. ORS 138.060(3). That court, in a per curiam opinion, reversed and remanded for trial citing *State v. Patton,* 47 Or App 169, 613 P2d 1102, *rev. denied* (1980). Judge Buttler dissented. *State v. Brown,* 49 Or App 75, 618 P2d 1318 (1980). We granted the defendant's petition for review, and we affirm the Court of Appeals.

The facts in *Patton* were very similar to the facts in this case. There, the defendant was arrested for driving

---

[2] The trial court did not enter findings of fact. The trial judge, in announcing his decision from the bench at the conclusion of the testimony at the hearing on the motion to suppress, confined his remarks to questions of law and did not discuss the facts. There appear to be no substantial questions of fact. The recital of the facts in this opinion are taken from the transcript of the testimony of the January 16, 1980 hearing on the defendant's motion to suppress.

under the influence of intoxicants and was taken to the Prineville jail. During the booking process, the defendant was asked to turn over his personal belongings to the officer to be inventoried. The defendant's jacket contained a metal canister about the size of a silver dollar. The booking officer opened the canister and discovered three LSD pills. The Court of Appeals, citing *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), *United States v. Edwards,* 415 US 800, 94 SCt 1234, 39 L Ed 2d 771 (1974), and *State v. Florance, supra,* held that a person under full custody arrest loses his expectation of privacy as to those items on his person and therefore the search of the canister was justified as incident to the custodial arrest. Judge Buttler dissented from the denial of the petition for reconsideration in *Patton* and argued in his dissent that the "closed container" rule in *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977), should apply to the facts in this case.

It is the defendant's position that "once the closed cigarette box[3] was taken from [his] possession" and was in the exclusive possession of the police, then any exigent circumstances that may have existed disappeared and the box could not be opened without a warrant. *United States v. Chadwick, supra; State v. Groda,* 285 Or 321, 591 P2d 1354 (1979); *State v. Fondren,* 285 Or 361, 591 P2d 1374 (1979); *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979). The defendant also argues that the size or location of the closed container should not make any difference. In other words, it is inconsistent to say that a suitcase in the trunk of an automobile *cannot* be opened without a warrant, while a wallet *can* be opened and searched without a warrant if it is taken from the person of the defendant during the booking process.[4]

---

[3] The defendant in his petition for review mentions only the "cigarette box" and does not mention the small "brown vial." Therefore, we will consider only the "cigarette box."

[4] The defendant on oral argument in this court said that *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966), was his "fall back position." By this the defendant must have meant that the officer did not have probable cause to believe that the white powder in the cigarette box was contraband. This argument was not presented in the trial court or in the Court of Appeals and therefore we do not consider it.

In its brief in the Court of Appeals, the state argued that under the cases of *United States v. Edwards, supra; Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973); *United States v. Robinson, supra,* and *State v. Florance, supra,* it was "clearly proper * * * for the police to seize and open small containers taken from an arrestee's person at the jail during the book-in process" unless the law had been changed by *United States v. Chadwick, supra.*

On oral argument before this court the state argued that when the defendant has already had his person seized as the result of a full custody arrest, he cannot have a separate expectation of privacy as to the items on his person. The state also contended that if the property could be seized, it could be searched in a "jail context"—the "primary emphasis being on the security of the jail."

Thus it appears from the position of the parties that there is a "face-off" between the *Robinson* line of cases and the *Chadwick* line of cases as to which rule of law applies to this fact situation. This court in *State v. Florance, supra* at 182, specifically recognized and adopted the rule as stated in *Robinson.* In *State v. Groda, supra* at 327, we said: "We rely on *United States v. Chadwick,* * * * for our decision." *See also State v. Fondren, supra,* and *State v. Downes, supra.*

The issues in this case have been narrowed. The defendant concedes that the state had probable cause to arrest him for driving under the influence of intoxicants, and he does not object to the seizure of the cigarette box. He objects only to the search of the box. The state admits that it did not have probable cause independent of the original arrest to believe that the cigarette box contained contraband. It also concedes that there were no exigent circumstances during the booking process.

As to the search of a person upon arrival at the place of detention, 2 LaFave, Search and Seizure 303, § 5.3 (1978) (a treatise on the Fourth Amendment), states at page 303:

"It now appears to be clearly established that when an arrested person has been delivered to the place of his forthcoming detention, he may be subjected to a rather

complete search of his person. This search may be conducted without a warrant, and requires no justification in the individual case other than that the person searched was lawfully arrested and is presently lawfully detained. There are two grounds upon which such a search is commonly upheld: (i) as a search incident to and reasonably contemporaneous with the preceding arrest; and (ii) as an inventory conducted to protect the arrestee's effects and to maintain the security of the detention facility."[5] (Footnotes omitted.)

The above quotation was written on the premise that

"* * * A search is deemed to be 'of a person' if it involves an exploration into an individual's clothing, including a further search within small containers, such as wallets, cigarette boxes and the like, which are found in or about such clothing. * * * " *Id.* at 347.

The same text refers to what it calls the "Robinson-Edwards rule" as authority for the proposition that "a search at the station which was undertaken as a pre-incarceration inventory may be justified upon the additional ground that it is a search incident to arrest." *Id.* at 309.

In *Robinson* an officer of the District of Columbia Metropolitan Police Department saw Robinson driving a 1965 Cadillac. Four days earlier the officer had checked the status of Robinson's operator's permit. The officer stopped the defendant and informed him that he was under arrest for "operating after revocation and obtaining a permit by misrepresentation." Robinson conceded, on appeal, that the officer had probable cause to arrest him and that a full-custody arrest was in fact made. When Robinson emerged from the vehicle the officer searched him and found a "crumpled up cigarette package" in a breast pocket of the coat he was wearing. The officer opened the cigarette package and found 14 capsules of white powder "which he thought to be, and which later analysis proved to be, heroin." Robinson was convicted in the District Court of possession and concealment of heroin. The Court of Appeals reversed, but the United States Supreme Court in turn reversed and reinstated the conviction, saying:

---

[5] The author has used the limitation, "rather complete search," to denote that there are restrictions as to the inspection of or intrusion into the body of the arrested person — questions we are not concerned with in this case.

" * * * The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person· is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 US at 235, 94 S Ct 467, 477, 38 L Ed 2d 427, 440.

In *Gustafson v. Florida, supra* (decided the same date as *United States v. Robinson, supra*), a municipal police officer for Eau Gallie, Florida, saw a 1953 Cadillac weave across the center line "three or four" times. After stopping the vehicle, the officer placed the driver, Gustafson, under arrest for failure to have an operator's license in his possession. It was conceded by the parties that the officer had probable cause to arrest Gustafson and take him into custody for the purpose of transporting him to the stationhouse.[6] The officer, while searching Gustafson at the scene of the arrest, found a Benson and Hedges cigarette box in the pocket of the coat he was wearing. The officer opened the box and found that it contained what appeared to be marihuana cigarettes. Gustafson was convicted of unlawful possession of marihuana. The Florida Court of Appeals reversed, but the Supreme Court of Florida in turn reversed and reinstated the conviction. The United States Supreme Court granted Gustafson, the petitioner, certiorari and affirmed the Supreme Court of Florida. The Court's opinion stated, in part:

---

[6] In his concurring opinion Mr. Justice Stewart said:

"It seems to me that a persuasive claim might have been made in this case that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments. But no such claim has been made. Instead, the petitioner has fully conceded the constitutional validity of his custodial arrest. * * * " 414 US at 266, 94 S Ct 488, 492, 38 L Ed 2d 456, 462.

"* * * Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the petitioner or that he did not himself suspect that the petitioner was armed. Having in the course of his lawful search come upon the box of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the homemade cigarettes which he believed to contain an unlawful substance, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct. * * * " 414 US at 265, 94 S Ct 488, 492, 38 L Ed 2d 456, 461.

Three months after the decision in *Robinson,* the United States Supreme Court decided *United States v. Edwards, supra.* In that case Edwards was arrested at 11 p.m. and was charged with attempting to break into the Lebanon, Ohio, post office. He was lodged in the local jail. About the same time an investigation at the scene showed that "the attempted entry had been made through a wooden window which apparently had been pried up with a pry bar, leaving paint chips on the window sill and wire mesh screen." Ten hours later, and while he was still in jail, Edwards' clothes were taken from him without a warrant and held as evidence. The clothing revealed paint chips matching those taken from the window of the post office. The Court of Appeals reversed the conviction and certiorari was granted. The Supreme Court reversed and concluded "that the Fourth Amendment should not be extended to invalidate the search and seizure in the circumstances of this case." The Court explained its decision in part as follows:

"The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrest, United States v Robinson, 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973); Chimel v California, 395 US 752, 755, 89 S Ct 2034, 23 L Ed 2d 685 (1969); Weeks v United States, 232 US 383, 392, 34 S Ct 341, 58 L Ed 652 (1914), and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained. United States v Robinson, supra.

"It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be

conducted later when the accused arrives at the place of detention. If need be, Abel v. United States, 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), settled this question. * * * "[7] 415 US at 802, 94 S Ct 1234, 1237, 39 L Ed 2d 771, 775.

It is obvious that the *Edwards* case can be distinguished on the facts from this case. However, the *Edwards* case authorized a search far beyond the limits necessary for this case. In *Edwards* the seizure of the clothes did not occur until 10 hours after the arrest. Here, the seizure and search of the cigarette box occurred as a part of the continuing process of stopping the vehicle, giving of field sobriety tests, arresting the defendant, transporting him to the jail, preparing for the breathalyzer test, and the booking. There is no evidence in the record as to the lapse of time from the arrest to the search of the cigarette box, but it could have easily been less than one hour. From the continuing nature of processing of the defendant, we find the search of the box

---

[7] In *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), Rudolph Ivanovich Abel, also known as Martin Collins and Emil R. Goldfus, was suspected by the Federal Bureau of Investigation of the crime of espionage, but because the evidence was insufficient to justify an arrest on that charge, the Bureau informed the Immigration and Naturalization Service that the suspect was an alien residing illegally in the United States. Abel was arrested with an administrative warrant and served with an order to show cause why he should not be deported. The arrest was made at Abel's room in the Hotel Latham in New York City by officers of the Immigration Service. Four agents of the Service searched Abel's person and belongings for a period of 15 to 20 minutes. Then he was told to assemble the things that he wished to take with him to the headquarters of the Immigration Service in New York City. At the headquarters a more thorough search was made and three of the challenged items were discovered and seized. On a later date Abel was arrested and charged with conspiracy to commit espionage. A motion to suppress the items seized was denied and Abel was convicted. The United States Supreme Court granted Abel's petition for certiorari and affirmed the conviction. As to three of the challenged items, the court said:

"Items (3), (4), and (5), a birth certificate for 'Emil Goldfus' who died in 1903, a certificate of vaccination for 'Martin Collins,' and a bank book for 'Emil Goldfus,' were seized, not in petitioner's hotel room, but in a more careful search at I.N.S. headquarters of the belongings petitioner chose to take with him when arrested. This search was a proper one. The property taken by petitioner to I.N.S. headquarters was all property which, under [Harris v. United States, 331 US 145, 67 S Ct 1098, 91 L Ed 1399], was subject to search at the place of arrest. We do not think it significantly different, when the accused decides to take the property with him, for the search of it to occur instead at the first place of detention when the accused arrives there, especially as the search of property carried by an accused to the place of detention has additional justifications, similar to those which justify a search of the person of one who is arrested. * * * " 362 US at 238, 80 S Ct 683, 697, 4 L Ed 2d 668, 686.

was part of the arrest itself or "reasonably contemporaneous" with it.

We think that a fair reading of *Robinson, Gustafson* and *Edwards* requires us to reach the conclusion that the search of the defendant's cigarette box in this case was lawful as an incident to his arrest, *unless* those cases have been limited by the more recent case of *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 538 (1977).

In *Chadwick* the railroad officials in San Diego saw a man and a woman load a 200-pound footlocker onto a train bound for Boston. The officials were suspicious because they noticed the "trunk was unusually heavy for its size, and that it was leaking talcum powder, a substance often used to mask the odor of marihuana or hashish." This information, plus a description of the man and the woman, was relayed to the federal agents in Boston. When the train arrived in Boston it was met by the agents and a dog trained to detect marihuana. After the man and the woman claimed the footlocker they were joined by Chadwick. In the meantime, the dog had signaled the presence of marihuana. An attendant at the railroad station moved the footlocker outside to Chadwick's automobile. The man, the attendant, and Chadwick lifted the 200-pound footlocker into the trunk of the automobile. While the trunk was still open and before the engine of the car was started, the federal agents arrested Chadwick, the man and the woman.

The footlocker was moved to the Federal Building where, one and one-half hours after the arrests, it was opened without a warrant and without consent. Large amounts of marihuana were found, and Chadwick and his companions were indicted for its possession. On the motion to suppress, the Government sought to justify the search under the "automobile exception" and as an incident to arrest. The District Court allowed the motion to suppress. Both the Court of Appeals and the Supreme Court affirmed. The opinion of the Supreme Court in part is as follows:

" * * * However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is

remote in time or place from the arrest,' Preston v. United States, 376 US, at 367, 11 L Ed 2d 777, 84 S Ct 881, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (Emphasis added; footnote omitted.) 433 US at 15, 97 S Ct 2476, 2485, 53 L Ed 2d 538, 550.

We think that the *Chadwick* case by its own language has distinguished it from the *Robinson, Gustafson,* and *Edwards* cases. By using the phrase "personal property not immediately associated with the person of the arrestee," the *Chadwick* case has exempted from the application of its ruling personal property discovered as a result of a search of the person, such as "wallets, cigarette boxes, and the like."

Our interpretation is reinforced by the following footnote to the *Chadwick* opinion:

"10. Unlike searches of the person, United States v Robinson, 414 US 218, 38 L Ed 2d 427, 94 S Ct 467 * * * (1973); United States v Edwards, 415 US 800, 39 L Ed 2d 771, 94 S Ct 1234 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest. Respondents' privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest." 433 US at 16, 97 S Ct 2476, 2486, 53 L Ed 2d at 538, 551.

Thus it is apparent that the *Chadwick* case did not attempt to limit the *Robinson* and *Edwards* cases. At least for the purposes of this case, there is no conflict between the *Robinson* line of cases and the *Chadwick* line of cases.[8] The distinction between the two lines of cases simply boils down to the fact that the *Robinson* cases are dealing with

---

[8] It could be argued that there is a conflict in the *Abel* case and the *Chadwick* case. Three of the challenged items in *Abel* were found as a result of the search of Abel's luggage or baggage at the place of detention. Therefore, it could be said that the law enforcement officers had reduced the luggage or baggage to their exclusive control and that the following search was not incident to the arrest. However, we read *Abel* as saying that the search of the luggage started in Abel's hotel room and was merely continued to the place of detention.

the search of the person, and the *Chadwick* cases are concerned with the search of property. A search of person is construed to include clothing and the opening of small closed containers like cigarette boxes and wallets. 2 La Fave, Search and Seizure 309.

The distinction between the search of property and the search of the person is demonstrated by the two lines of cases. The following cases involved a search of property: *United States v. Chadwick, supra* (200-pound foot locker); *Arkansas v. Sanders,* 442 US 753, 99 S Ct 2586, 61 L Ed 2d 235 (1979) (suitcase in trunk of a taxicab); *State v. Groda, supra* (briefcase in trunk of a car); *State v. Fondren, supra* (trunk of a car); *State v. Downes, supra* (cosmetic kit or flight kit in the trunk of a bus); *State v. Keller,* 265 Or 622, 510 P2d 568 (1973) (fishing tackle box in a vehicle). On the other hand, in both the *Robinson* and *Gustafson* cases the search of the person resulted in the discovery of cigarette boxes in the clothing of the arrested person.

In *State v. Florance, supra,* we granted a petition for review because the case presented "serious questions relating to the nature and scope of the search of a person as an incident to an arrest, particularly as a result of the decision by the Supreme Court of the United States in *United States v. Robinson,* * * *."

In *Florance* the defendant was arrested near Estacada for burglary and for menacing an officer with a pitchfork. As a result of a "pat-down" the officer took a billfold from the defendant's pocket. The officer then took the defendant and the billfold to the Estacada City Hall to prepare a custody report prior to transporting the defendant to the Clackamas County jail in Oregon City. When the defendant refused to answer questions concerning his identity, the officer opened the billfold and found five little plastic bags which contained what was later proved to be illegal drugs. The defendant was convicted of possession of cocaine and other dangerous drugs.

The Court of Appeals reversed, holding that it was error for the trial court to deny the defendant's motion to suppress. This court reversed the Court of Appeals and reinstated the conviction. Between the decision by the

Court of Appeals and the decision by this court, the United States Supreme Court decided the *Robinson* case.

This court in *Florance* recognized and adopted the rule in *Robinson* and mentioned the *Gustafson* and *Edwards* cases with apparent approval. 270 Or at 182, 176. The *Chadwick* case was not decided until three years later. In the *Florance* opinion we said:

> " * * * We hold, however, that upon the taking into custody of a person following a legal arrest, such a search of the person arrested as would be reasonable if made by the officer at that time and place may be made by him at any time in the course of transporting the arrested person to jail. * * * " 270 Or at 191-192.

■    Here, we hold that the police without a warrant may search a closed container seized from the person of an individual during the booking process at the place of detention as an incident to a lawful arrest. The search may be made independent of probable cause other than the lawful arrest and without exigent circumstances. The search of the person includes the opening of small containers found on the person or in clothing worn by the arrested individual.

We think that our decision in this case is a logical step following the *Florance* case. It would not make sense to say that a defendant can be searched, as an incident of arrest, on the jail house steps, but cannot be searched during the booking procedure.

In *Florance* we quoted with approval from *State v. Cloman,* 254 Or 1, 15, 456 P2d 67 (1969):

> " 'The searched person's privacy has already been partially invaded by the arrest; therefore, the search does not have the personal impact that it otherwise might have.' "[9] 270 Or at 183.

---

[9] The concurring opinion of Mr. Justice Powell in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), expresses the same idea in greater detail:

"The Fourth Amendment safeguards the right of 'the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . . ' These are areas of an individual's life about which he entertains legitimate expectations of privacy. I believe that an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person. Under this view the custodial

We affirm the Court of Appeals.

**LINDE, J.,** concurring.

This case, as usual, has been briefed exclusively as an application of the federal fourth amendment as interpreted by the Supreme Court of the United States. The Court's opinion decides nothing other than its best estimate of what a majority of that court most likely would hold on the facts before us. Nowhere in the briefs or in the opinions of the Court of Appeals in this case is there any reference either to the source and scope in Oregon law of a police officer's legal authority to open closed containers taken from a person in custody on a traffic charge, or to the limits imposed on a grant of such legal authority by Article I, section 9 of the Oregon Constitution.[1]

The Court's opinion therefore makes no pretense that the result represents the most principled or the most desirable rule, or even that it represents a "rule" at all. The opinion points out that some United States Supreme Court decisions have sustained warrantless searches of containers that are taken from persons being booked at the police station or jail as some kind of belated "search incident to arrest," while other Supreme Court decisions prohibit warrantless searches of larger closed containers seized from someplace other than the arrested person's clothing. *Supra,* 291 Or at 646, citing *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 LEd2d 427 (1973), *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 LEd2d 456 (1973),

---

arrest is the significant intrusion of state power into the privacy of one's person. If the arrest is lawful, the privacy interest guarded by the Fourth Amendment is subordinated to a legitimate and overriding governmental concern. No reason then exists to frustrate law enforcement by requiring some independent justification for a search incident to a lawful custodial arrest. This seems to me the reason that a valid arrest justifies a full search of the person, even if that search is not narrowly limited by the twin rationales of seizing evidence and disarming the arrestee. The search incident to arrest is reasonable under the Fourth Amendment because the privacy interest protected by that constitutional guarantee is legitimately abated by the fact of arrest." (Footnotes omitted.) 414 US at 236, 94 S Ct 467, 38 L Ed 2d 427, 441.

[1]  "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

*United States v. Edwards,* 415 US 800, 94 S Ct 1234, 39 LEd2d 771 (1974), *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 LEd2d 538 (1977), *Arkansas v. Sanders,* 442 US 753, 99 S Ct 2586, 61 LEd2d 235 (1979)). It assumes that under those federal precedents this case would be placed under what it calls the *"Robinson* line" rather than the *"Chadwick* line" of cases.

I have no reason to disagree with that assumption about the current state of the federal case law, and this is the only question that has been placed in issue. Each month's state of the federal case law, however, can hardly be said to provide the necessary legal basis and boundaries for the authority and procedures governing Oregon law enforcement officers. Those officers as well as the persons whom they confront deserve better legal guidance than advice to carry the latest Supreme Court reports in their pockets.

The latest Supreme Court reports contain two decisions under the fourth amendment that illustrate the point, *Robbins v. California,* 453 US 420, 101 S Ct 2841, 69 LEd2d 744 (1981), and *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 LEd2d 768 (1981). *Robbins v. California* reversed a conviction because of the warrantless search of wrapped packages seized by police from the luggage compartment of a car in the course of what began as a traffic arrest but produced probable cause to hold the arrested person for drug offenses. No single opinion commanded a majority in the Supreme Court. The decision and an opinion for four justices was announced by Mr. Justice Stewart on July 1, 1981, at the end of his long and distinguished career. This plurality opinion followed *Chadwick* and *Sanders, supra,* to hold that closed packages are not subject to warrantless search merely because they are found in a lawful search of an automobile. One justice disagreed with the plurality opinion but concurred because "the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents." *Robbins v. California, supra,* 69 LEd2d at 752. The Chief Justice merely announced his concurrence in the judgment. 69 LEd2d at 752. Three separate dissents argued that the sealed package could be opened because it was seized in an automobile (Blackmun, J., 69 LEd2d at 756,

and Stevens, J., 69 LEd2d at 762), or because of more radical objections to the rules against such searches (Rehnquist, J., 69 LEd2d at 757.) But the majority's position corresponds to what this court concluded in *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979).

In the companion decision, *New York v. Belton, supra,* also written by Justice Stewart, the Court sustained the seizure of cocaine from the zippered pocket of a jacket found on the back seat of an automobile as a "contemporaneous incident" of a valid "custodial arrest," because objects in the vehicle's passenger compartment are within reach of the arrestees. 69 LEd2d at 775. Two justices dissented on the ground that the warrantless seizure could not constitutionally extend beyond objects actually within reach at the time of arrest and search, which Belton's jacket was not.

These latest Supreme Court discussions of warrantless searches of closed containers subsequent to an arrest can be factually distinguished from the case before us insofar as they involved containers found in automobiles. My purpose here is not to debate the relevance of that distinction, compare *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979), nor the justices' competing views of national law. On that question a state court's only duty is not to allow what the Supreme Court's decisions appear to forbid. It is by no means obvious from *Robbins* whether or why this year's federal doctrines would allow the same closed package to be opened if Robbins or the police had carried it to the station, where the present defendant's sealed package was opened; but given the division of opinions in *Robbins* there is little to be gained by arguing with the present majority opinion's assumptions about the federal rule for this case. Justice Stewart's majority opinion in *Belton,* however, contains larger premises that come closer to my point. He quoted Professor LaFave's important axiom that the law governing searches and seizures can only function "if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand" as to what they may do, because these rules are "primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police

in the context of the law enforcement activities in which they are necessarily engaged." *New York v. Belton, supra* 69 LEd2d at 773-4, quoting LaFave, *Case-by-Case Adjudication versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup Ct Rev 127, 142. Without meaningful legal rules, the *Belton* opinion continued, the citizen cannot know his rights nor the officer the scope of his authority. 69 LEd2d at 774.

Despite judicial opinions like that in *Belton* or comments like Professor LaFave's, however, the United States Supreme Court cannot make such a set of rules for Oregon, or for any jurisdiction, even if the justices were in agreement. The Supreme Court can do no more than apply the outer limits imposed by the 4th and 14th amendments on such official actions as have been taken under congressional or state authority in concrete circumstances. Moreover, as I stated at greater length in concurring in *State v. Greene,* 285 Or 337, 345, 591 P2d 1362 (1979) and *Downes* and *Groda, supra,* fourth amendment case law falls short as a source of rules for reasons apart from federalism and the unsystematic flow of case-by-case adjudication; as the chief source of law it also evades the normal accountability of lawmakers for rules governing the most direct exercise of governmental power against individuals.[2] Nor can such rules, however they are made, be

---

[2]   "There can be no doubt that the authority of law enforcement officers to search or to seize persons, vehicles, houses, and other private effects, and the limits of that authority, ought to be defined by law, and that both the authority and its limits ought to be as understandable both to the public and to its officials as it is possible to make them. There is no more fundamental area of confrontation between governmental power and the individual. When we rely on explicit and detailed legal procedures by which government may grant or deny an individual a license for some activity, or collect a tax, or regulate the conduct of a business or the use of property, it is not unreasonable to suppose that there are similarly explicit and detailed legal procedures for searching or seizing a person or his property. It is not unreasonable to believe that, but it is unfounded.

"[T]he constitutions neither grant such authority to anyone, nor prescribe who may exercise it, nor define the circumstances and manner in which, within those outer constitutional limits, the authority should or should not be employed. These are questions which, as far as the powers of state and local officers are concerned, are left to state law. Like all public law and its administration, they are the responsibility of politically accountable legislators. and other state and local officials. When a court is called upon to decide only whether a particular search or seizure crossed the constitutional boundary, its decision marks only that boundary; it does not prescribe the law with

stated simply as verbal variations of the constitutional texts that searches and seizures shall not be "unreasonable."

The Court does not say, as in *State v. Greene, supra,* that today's decision attempts to bring clarity into the law relating to the search of closed containers. As already stated, this court contributes nothing of its own when it is asked to apply federal law. In a principled analysis, it may well be difficult to disagree with Judge Buttler's straightforward view in the Court of Appeals that once a closed container is no longer within an arrested person's reach, there normally are no "exigent circumstances" to justify searching the container without first explaining to a magistrate why there is probable cause to do so. *State v. Brown,* 49 Or App 75, 77, 618 P2d 1318 (1980). This seems so whether the closed container is a woman's handbag, a man's briefcase, a gift-wrapped package from a store, a musical instrument case, or a tin can sealed with tape. All are a person's "effects," in the constitutional term. When there is no reason to fear some concrete danger from such a container, it may be good police procedure but it is hardly an "exigent" necessity to inventory the contents without the assent of the person for whose protection this ostensibly is done.[3] If that were sufficient justification, it would similarly justify searching footlockers, suitcases, large packages, and other containers taken into police custody other than from the arrested person's clothing.

---

respect to the officer's authority to conduct the search or seizure apart from that outer limit. Within this limit, the question of his authority is not a constitutional question but one of ordinary law." 285 Or at 346-47.

[3] With respect to searches under a warrant, ORS 133.595 provides:

"Promptly upon completion of the search, the officer shall make a list of things seized, and shall deliver a receipt embodying the list to the person from whose possession they are taken, or the person in apparent control of the premises or vehicle from which they are taken. If the vehicle or premises are unoccupied or there is no one present in apparent control, the executing officer shall leave the receipt suitably affixed to the vehicle or premises."

If the arrested person refuses consent to open a container for inventory purposes, officers can make a note of that fact and safeguard the closed container, unless they choose to seek a magistrate's warrant to search it. As the Court points out, according to the officer's testimony in this case, the procedure was that the arrested person signed the inventory list and his property then "is placed in a steel box and locked up." This effectively negates any "exigent" reason for a further warrantless search of the closed box.

When police halt a vehicle because it is "weaving" and take the driver into custody because he appears to be intoxicated, the arrest, or "seizure," may be justified by probable cause that the driver has committed a traffic offense. But arrest is only a procedural step permitted, though not required, in order to charge a person with an offense. ORS 133.005(1), 133.045-133.080, 484.100, 484.230, *cf.* ORS 484.435. An arrest on probable cause of one charge does not make the arrested person a general suspect of other crimes. Probable cause to believe that a person is driving illegally is not probable cause to believe that his cigarette case contains unlawful drugs.

Possibly there is a principled answer that can justify the warrantless search of an apparently harmless container after it has been removed beyond an arrested person's reach. In this case, however, no independent search for a principle is undertaken, for none has been offered or requested. Perhaps this reflects a belief that this court has bound Oregon courts to follow the federal case law and doctrinal fashions on searches and seizures whatever they may be at the time, as counsel for the state have been known to assert. This is not correct. In recognizing the parallel character of Article I, section 9, and the 4th amendment, the court has been careful to say that for practical reasons it generally respects the voluminous and familiar 4th amendment jurisprudence (which unfortunately also monopolizes the secondary commentary) unless "persuasive reasons" are shown for a different analysis. *See State v. Sims,* 287 Or 349, 353, n. 1, 599 P2d 461 (1979) and *State v. Greene, supra,* 285 Or at 339, quoting *State v. Flores,* 280 Or 273, 279, 570 P2d 965 (1977); *State v. Florance,* 270 Or 169, 182, 527 P2d 1202 (1974). As long as the case is argued and decided entirely on federal law, however, I concur in the Court's conclusion.

Lent, J. joins in this concurring opinion.