STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL CRAIG LOWRY,
*Appellant.*

(No. 79-1588-C, CA A22852)

650 P2d 1062

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief was Morrow, McCrea & Divita, P.C., Eugene.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the denial of his motion to suppress evidence.

Defendant was stopped for driving under the influence of intoxicants. At the scene of the arrest, the arresting officer conducted field sobriety tests. After defendant's poor performance on these tests, he was arrested and handcuffed. A search of defendant's person revealed a small amber bottle, covered by a plastic film with a tamper-proof cap. The bottle was half full of a powdered substance.[1] A chemical test performed on the powder, approximately 30 minutes after the arrest, showed that it was cocaine. The officer who conducted the search and the test testified at the suppression hearing that he had five and a half years' experience with the Josephine County Sheriff's Department as a traffic officer. Previous to that employment, he had worked three years for the Santa Ana, California, Police Department. His experience there was in patrol, animal regulation and vice. Although there was a basis to believe that the officer could recognize marijuana, he was not asked and did not say that he could recognize any other form of contraband or that he had any training or experience concerning other contraband substances.

Defendant contends that the seizure of the bottle and subsequent analysis of its contents were unlawful, because the officer did not have probable cause to believe that the powder in the bottle was contraband.[2]

The leading case on this question is *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). In that case, the defendant was arrested for public drunkenness, and a search incident to the arrest revealed a bottle containing three kinds of pills. The arresting officer was suspicious and seized the pills, some of which were found to be contraband. The Supreme Court held that

"* * * before the officer had the right to seize the implements of a crime committed in his presence, other

---

[1] Defendant does not challenge the legality of the arrest or initial search.

[2] This is an issue that was expressly not addressed in *State v. Brown,* 291 Or 642, 634 P2d 212 (1981), because it was not raised in the trial court or this court.

than that for which the arrest was made, he must have reasonable grounds to believe that the article he has discovered is contraband and therefore a crime is being committed.* * *

"* * * * *

"If the rule were otherwise, an officer who desired to inculpate an arrested person in another crime, could seize everything in such person's possession and control upon the prospect that on further investigation some of it might prove to have been stolen or to be contraband. It would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much an exploratory seizure as one made upon an arrest for which no probable cause existed. Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion.

"The application of the above rules of law to the facts in the present case leaves only one result. The officer had no information from which it was reasonable to assume that the pills might be contraband. The conclusion to be drawn from the evidence was that the officer was acting on suspicion. It is not enough that the officer suspects in good faith; his suspicion must be reasonable. * * * " 245 Or at 284, 287-88.

The court found that, despite his suspicions, the officer did not have probable cause to believe that the pills were contraband and, therefore, the seizure was unlawful. This holding was called into question when the Supreme Court, in *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), adopted the holding of *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), that the search of an arrested person may include seizure of contraband probative of criminal conduct other than the conduct which is the basis for the arrest.

The court in *Robinson,* however, did not address the question in *Elkins* of the necessity of *probable cause* to seize evidence of a crime other than the one for which the arrest is made. It discussed, instead, only the permissible scope of a search incident to the arrest.

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of .the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment." 414 US at 235.

The court did not purport to say that items discovered in a permissible search could be seized, absent evidence that the officer had probable cause to believe that they constituted evidence of a separate crime. In light of this, Professor LaFave hypothesizes:

> "Indeed, if anything, *Robinson* points in the opposite direction; it is the probable cause requirement for subsequent seizure which made the *Robinson* rule of search without probable cause (except for the arrest) tolerable." LaFave, *Search and Seizure,* § 5.2, 302 (1978).

In our opinion in *State v. Florance,* 15 Or App 118, 515 P2d 195 (1973), *rev'd* 270 Or 169, 527 P2d 1202 (1974), we pointed out that after a valid full custodial arrest, the officer removed small bags containing a powdered substance. The officer did not testify that he had recognized the substance to be contraband, but

> "* * * for reasons not of record, [the officer] seized these plastic bags and caused their contents to be chemically analyzed. They proved to contain illegal drugs which formed evidentiary basis of the three counts of criminal activity in drugs of which defendant was eventually convicted." 15 Or App at 122.

Relying on *Elkins,* we held the seizure invalid for want of evidence of probable cause in the record. The Supreme Court, however, reversed, saying:

> "* * * This officer was experienced in such matters and upon finding these plastic bags containing white and blue powdered substances he was entitled to use common sense.

Indeed, it is the business of police officers to be suspicious and this officer had not only the right, but the duty to determine whether or not such powdered substances constituted illegal drugs. This was not a case involving a bottle of pills, as *State v. Elkins, supra,* and the rule as stated in that case (at 290-91) is not contrary to this conclusion, but supports it. * * *" 270 Or at 190-91.

In a footnote, the Supreme Court quoted from *Elkins* as follows:

" 'It should not be forgotten that it is the duty of police officers to ferret out crime. It is their business to be suspicious and they are trained in the ways of the unlawful. Therefore reasonable grounds for a police officer to believe that he may have come upon implements or fruits of a crime other than that for which the arrest was made may be furnished by something that might be of relative insignificance to a layman. * * *" 270 Or at 191.

■ *Florance* did not overrule *Elkins,* but relied on it, and it is clear from *Elkins* that probable cause is required before evidence of a crime other than that for which defendant was arrested may be seized. As pointed out in *Elkins,* such probable cause may be provided by facts that, though insignificant to a layman, may have special meaning to a trained law enforcement officer.

At the suppression hearing in this case, nothing was adduced as to why the officer caused the contents of the bottle to be analyzed. There was nothing articulated that he suspected the substance was contraband. However, as we stated in *State v. Carter/Dawson,* 34 Or App 21, 29, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979):[3]

"* * * In Oregon, it is reasonably well settled that arrests and searches are judged by a reasonable-person objective standard; the fact that a police officer articulates his subjective reason for arresting or searching that happens to be invalid is irrelevant if a court later concludes that a reasonable person, viewing the facts objectively, would have had probable cause to arrest or search." (Citations omitted.)

---

[3] *State v. Carter/Dawson* 34 Or App 21, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979), was a "stop" case in which we held that, because both this court and the Supreme Court had held that arrests and searches are to be judged by an objective standard of probable cause, an objective standard should also be applied to "stops." On review, the Supreme Court expressly approved the rule we had adopted. 287 Or at 488.

■ We now hold that seizures are likewise to be judged by an objective standard and conclude that they are to be tested solely by whether the facts perceived by the officer constitute probable cause in an objective sense and that his subjective reasons do not affect the legality of the seizure if, in fact, probable cause existed. In the "stop" context of *Carter/Dawson,* we said:

"* * * An officer who made a stop must still state what he perceived *and reasonably believed the facts to be.* The officer may also state what conclusions his subjective reasoning process led him to, *i.e.,* his own conclusion about his legal authority. But it remains the obligation of the judiciary to reach the ultimate legal conclusion about the officer's legal authority; *and in so doing we may consider the parties' arguments about what a reasonable officer objectively could have concluded,* not just arguments about what the particular officer subjectively did conclude." (Emphasis added.) 34 Or App at 30.

■ In view of our adoption of the objective test for probable cause, with the result that the officer's subjective reasons have no effect on that inquiry, we conclude that the determination of probable cause is a judicial conclusion as to what a hypothetical reasonable officer objectively could have concluded from the facts actually perceived by the officer involved. Contrary to the first emphasized portion of the quotation from *Carter/Dawson,* it is not *necessary* that the officer "* * * state what *he* * * * reasonably believed the facts to be."[4] (Emphasis added.)

■ The facts perceived by the officer here, and to which he testified, were such as would cause an officer trained with respect to illegal drugs reasonably to believe that the bottle contained contraband. In *Florance,* the Supreme Court held:

"* * * [I]t was not unreasonable for an arresting officer experienced in such matters who found plastic bags containing powdered substances to seize them and have the

---

[4] The officer was obviously suspicious about the contents of the bottle; he personally analyzed its contents for cocaine 30 minutes after the arrest. It is not realistic to believe that officers will test substances of which they are not suspicious. Under the objective test for probable cause, the officer's failure to articulate his subjective reasons for believing the powder was cocaine are irrelevant and, for that reason, logically need not be articulated.

contents analyzed, considering the fact of common knowledge that illegal drugs are often carried today in the form of powder in plastic bags and that legal drugs are almost never carried that way." 270 Or at 192, n 9.

That the substance in this case was contained in an amber bottle rather than a plastic bag is not a distinguishing difference. We conclude that finding a bottle of that kind under these circumstances constitutes probable cause to believe it contains contraband. Although this officer was not shown to be experienced in matters relating to drugs, applying the objective test referred to in *Carter/Dawson,* he had probable cause and was not required to obtain a warrant to make a seizure that a reasonable officer with such experience could make on probable cause without a warrant. *See State v. Collicott,* 56 Or App 605, 642 P2d 1187, *rev den* 293 Or 190 (1982) (probable cause existed to search despite officer's incorrect belief that it did not).[5]

Affirmed.

**BUTTLER, P. J.,** dissenting.

This case is a sequel to *State v. Brown,* 291 Or 642, 634 P2d 212 (1981). As in *Brown,* the defendant here was taken into custody, having been arrested for driving under the influence of intoxicants; a search of his person incident to the arrest revealed a closed container, which was seized by the police officer and then opened to reveal a powdered substance. The court in *Brown* held that the search of defendant's person, the seizure of the closed container and the search of the closed container was permissible.

Here, as in *Brown,* the officer submitted the powdered substance to a laboratory for analysis, resulting in a determination that the powder was cocaine, a controlled substance. In *Brown,* the court expressly declined to decide whether the officer, without probable cause, was authorized to have the powder tested in the police laboratory; it declined to rule on that question because the defendant had not raised it below, but the court cited *State v. Elkins,*

_____

[5] In *State v. Collicott,* 56 Or App 605, 610-11, 642 P2d 1187, *rev den* 293 Or 190 (1982), Gillette, P.J., concurring, noted that, although unnecessary to say in the context of *Collicott,* if probable cause existed, a magistrate's denial of a warrant would not invalidate a subsequent search.

245 Or 279, 422 P2d 250 (1966), as supporting the proposition that the officer could not do so without probable cause to believe the substance was contraband.

The majority, although quoting extensively from *State v. Elkins, supra* (59 Or App 340-41), apparently conclude that *Elkins* is no longer the law. The majority argue, quite rationally, that the court's decision in *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), effectively did away with the rule adopted in *Elkins.* However rational the majority here may be, the majority in *Florance* did not even suggest that *Elkins* was overruled; instead, it "relied" on it, contending that *Elkins* supported their conclusion. 270 Or at 190-91. That reliance was dubious at best, because the *Florance* majority distinguished *Elkins* on the basis that the substance seized from Elkins was in pill form, whereas the substance seized from Florance was in powder form — a distinction, I submit, without a difference. The court took judicial notice of the "fact" that controlled substances are frequently in powdered form rather than in the form of pills or tablets. From the number of cases which this court reviews, I think we may take judicial notice of the fact that many controlled substances are in pill or capsule form, as well as powder, depending on the means of ingestion. That distinction apparently did not impress the court in *Brown:* it left open whether *Elkins* controlled the issue presented here.

A more significant distinction exists between this case and *Florance,* where the court expressly stated that the officer "was experienced in such matters" (that is, narcotics); here, the majority make no pretense that the officer was so experienced. Rather, the majority rely on what a hypothetically reasonable police officer could have concluded from what he saw to support the finding of probable cause. However, apparently recognizing that that test may be too amorphous, the majority goes on to say:

> "The facts perceived by the officer here, and to which he testified, were such as would cause *an officer trained with respect to illegal drugs* reasonably to believe that the bottle contained contraband. * * *" (Emphasis supplied.) 59 Or App at 344.

Does a hypothetically reasonable police officer equate with an officer trained with respect to illegal drugs? If so, the officer here does not fit the slot.

In my opinion, *Elkins* was correct in holding that before an officer may seize the implements of a crime committed in his presence other than that for which the arrest was made,[1] he must have reasonable grounds to believe that the article he has discovered is contraband. Apparently, the Supreme Court believes that *Elkins* is still viable; if it did not, there would have been no reason in *Brown* to avoid the issue decided here. It is worth quoting the following language from *Elkins:*

> "If the rule were otherwise, an officer who desired to inculpate an arrested person in another crime, could seize everything in such person's immediate possession and control upon the prospect that on further investigation some of it might prove to have been stolen or to be contraband. It would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much an exploratory seizure as one made upon an arrest for which no probable cause existed. Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion." 245 Or at 287-88.

It may be that the trend is more in line with *Florance* and *Brown* and away from *Elkins.* But 1984 is rapidly approaching, and if that trend continues "[t]he right of people to be secure in their persons, houses, papers and effects * * *" (US Const, Amend IV) appears to be a gloom on the not too distant horizon. The curiosity of the hypothetically reasonable officer effectively disposes of the requirement that there be probable cause.

I would reverse, relying on *State v. Elkins, supra,* and therefore dissent.

---

[1] Here, defendant was stopped initially for a defective headlight. The officer detected a strong odor of alcohol on his breath and arrested him for DUII, leading to the search of his person, seizure of the amber colored pill bottle without probable cause and ultimate conviction for possession of a controlled substance.